**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
286 Madison Avenue, 11th Floor
New York, NY 10017
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Tracy L. Klestadt
John E. Jureller, Jr.
Brendan M. Scott
Andrew C. Brown
Kevin B. Collins

*Counsel to Broadband Telecom, Inc., Bridgevoice, Inc., BB Servicer, LLC, Carriox Telecap, LLC, Carriox Towercap, LLC BB Capital SPV, LLC and Carriox Capital II LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | : | |
| | : | Chapter 11 |
| BANKIM BRAHMBHATT, | : | |
| | : | Case No. 25-73100 (LAS) |
| | : | |
| Debtor. | : | |

**CORPORATE DEBTORS' MOTION FOR AN ORDER COMPELLING BANKIM BRAHMBHATT TO COMPLY WITH ORDER PURSUANT TO BANKRUPTCY RULE 2004 AND RELATED SUBPOENA**

**TO THE HONORABLE LOUIS A. SCARCELLA**
**UNITED STATES BANKRUPTCY JUDGE:**

Broadband Telecom, Inc., Bridgevoice, Inc., BB Servicer, LLC, Carriox Telecap, LLC, Carriox Towercap, LLC, BB Capital SPV, LLC and Carriox Capital II LLC (collectively, the "Corporate Debtors"), by and through their undersigned counsel, hereby submit this motion (the "Motion")[1] for entry of an order, in substantially the same form as that attached hereto as **Exhibit "A"** (the "Proposed Order"), compelling Bankim Brahmbhatt ("Brahmbhatt" or the

1 Capitalized terms used but not immediately defined herein shall have the meanings ascribed to them elsewhere in the Motion.

"Individual Debtor") to comply with the Corporate Debtors' Subpoena for Rule 2004 Examination (the "Subpoena"), issued pursuant to that certain *Order Authorizing Issuance of Subpoenas for the Production of Documents and Examination of Bankim Brahmbhatt*, dated April 14, 2026 (the "Rule 2004 Order") [Docket No. 70]. In support of the Motion, the Corporate Debtors file the Declaration of John E. Jureller, Jr. (the "Jureller Declaration") attached hereto as **Exhibit "B"**, and respectfully set forth as follows:

## PRELIMINARY STATEMENT

As set forth in their 2004 Application (defined later herein), the Corporate Debtors are debtors and debtors in possession in jointly administered Chapter 11 cases pending before the Court under lead Chapter 11 case number 25-73095. Since the Court appointed the Corporate Debtors' Independent Director/Independent Manager and Chief Restructuring Officer (or "CRO") in their Chapter 11 cases, the Corporate Debtors have been engaged in an ongoing effort to analyze their assets and liabilities, and to evaluate restructuring options, including without limitation, the potential for a sale, or other restructuring or an efficient winding up of the Corporate Debtors' businesses, and investigating potential estate causes of action. Inherent in such an analysis is the need to review books and records to verify the Corporate Debtors' historic operations and current ongoing operations.

Brahmbhatt is the ultimate beneficial owner and principal of the Corporate Debtors, and at all relevant times prior to the filing of the Corporate Debtors' bankruptcy cases, he was the chief executive officer, president and/or managing member of the Corporate Debtors. As such, there can be no question that he participated in the management of all aspects of the Corporate Debtors' business operations. Indeed, Brahmbhatt, as arguably the most knowledgeable person, was the authorized representative who signed the chapter 11 petitions for several of the Corporate Debtors.

Based upon his former role with the Corporate Debtors, it is believed that Brahmbhatt is in the possession, custody or control of information and documents, including without limitation electronically stored information, regarding the Corporate Debtors' assets, historic operations, and financial affairs, which will assist the Corporate Debtors in evaluating potential claims in both the Corporate Debtors' cases and Brahmbhatt's Chapter 11 case.

Certain of the Corporate Debtors and Bankai Infotech Limited ("Bankai Infotech") are parties to a certain Outsourcing Agreement (as defined below) whereby Bankai Infotech agreed to provide to the Corporate Debtors, and the Corporate Debtors agreed to outsource to Bankai Infotech, substantially all administrative business functions required by the Corporate Debtors to operate their respective businesses, including without limitation, maintenance of the Corporate Debtors' books and records, customer and billing records and data, internal and external communications including emails, and historical data. The Corporate Debtors have continuously requested that Bankai Infotech provide the Corporate Debtors with direct access to their own books and records, including billing system data and related business communications that are maintained in an Office 365 platform or are stored on servers owned or leased by the Corporate Debtors including backups thereof, held at Co-Location Sites in New York and New Jersey and possibly elsewhere (the "Co-Location Sites"). To date, Bankai Infotech has neither provided login credentials nor provided an image of the relevant data stored within the Office 365 platform or the servers. According to Brahmbhatt, only Bankai Infotech has direct access to and control over the servers and the Office 365 platform. He has denied that he has login credentials to access the Servers or the Microsoft Office 365 platform or that he can direct Bankai Infotech to provide direct access to the Corporate Debtors.

Having been denied direct access by Banki Infotech to their own books and records, the

Corporate Debtors must seek information and relevant materials from other sources. The Corporate Debtors believe that in the ordinary course of their prepetition business, Brahmbhatt interacted with Bankai Infotech regularly regarding the Corporate Debtors' operations, and given his former role as the Corporate Debtors' CEO, president or managing member, as applicable, it is likely that Brahmbhatt has substantial knowledge regarding the Corporate Debtors' assets and operations and may also be in the possession, custody or control or documents and electronical stored information concerning the Corporate Debtors' assets and liabilities and its historic operations. Further, the Corporate Debtors believe that Brahmbhatt may have the necessary software and access credentials for the Corporate Debtors' operating systems including the Servers.

Accordingly, the Corporate Debtors filed that certain *Ex Parte Application for an Order, Pursuant to Fed. R. Bankr. P. 2004, Authorizing the Examination of Bankim Brahmbhatt* dated April 13, 2026 (the "2004 Application") [Docket No. 69] seeking, *inter alia*, authority to demand documents in Brahmbhatt's possession, custody and control related to the Corporate Debtors' assets, historic operations, and financial affairs. On April 13, 2026, the Court entered the Rule 2004 Order granting the relief requested in the 2004 Application.

The Rule 2004 Order and Subpoena was served upon Brahmbhatt, by his bankruptcy counsel, by mail on April 20, 2026. While Brahmbhatt served his objections and response ("Brahmbhatt Response") to the Subpoena by email on June 8, 2026, no documents were produced at that time. It was explained by Brahmbhatt's counsel that responsive documents needed to be extracted from Brahmbhatt's devices by a third party provider, which was represented would take approximately three (3) weeks. To date, despite more than seven (7) weeks elapsing since the date of the service of the Brahmbhatt Response, and more than three (3) months since the service

of the Subpoena, no documents have been produced by Brahmbhatt, despite his positions with the Corporate Debtors.

As a result of the foregoing, the Corporate Debtors believe that an order compelling Brahmbhatt's immediate compliance with the 2004 Order is necessary and required.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Administrative Order No. 264 titled "In the Matter of The Referral of Matters to the Bankruptcy Judges" of the United States District Court for the Eastern District of New York (Weinstein, C.J.), dated August 28, 1986, and Administrative Order No. 601 of the United States District Court for the Eastern District of New York (Amon, C.J.), dated December 5, 2012.

2. Venue of this proceeding and this application is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**INTRODUCTION**

I. Brahmbhatt's General Case Background

4. On August 12, 2025, Brahmbhatt filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") (the "Brahmbhatt's Bankruptcy Case").

5. Brahmbhatt continues to manage his property as a debtor and debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in Brahmbhatt's Bankruptcy Case. As of the date hereof, no official committee of

unsecured creditors has been appointed or designated in Brahmbhatt's Bankruptcy Cases.

6. On November 14, 2025, the Court entered the *Stipulation And Order Between Brahmbhatt And Debtors To (I) Extend Deadline For Debtors To File Proofs Of Claims And (II) Extend Deadline For Debtors To Object To Dischargeability Pursuant to Bankruptcy Code Sections 523(a) And 1005(a) And Bankruptcy Rule 4007(c)* [Docket No. 49], which set the Corporate Debtors bar date through and including January 31, 2026 and the Corporate Debtors' deadline for any objection to dischargeability in the Brahmbhatts' Bankruptcy Case through and including January 31, 2026.

7. On January 27, 2026, the Court entered the *Second Stipulation And Order Between Brahmbhatt And Debtors To (I) Extend Deadline For Debtors To File Proofs Of Claims And (II) Extend Deadline For Debtors To Object To Dischargeability Pursuant to Bankruptcy Code Sections 523(a) And 1005(a) And Bankruptcy Rule 4007(c)* [Docket No. 49], which set the Corporate Debtors bar date through and including March 31, 2026 and the Corporate Debtors' deadline for any objection to dischargeability in the Brahmbhatts' Bankruptcy Case through and including March 31, 2026.

8. On March 26, 2026, the Court entered the *Third Stipulation And Order Between Individual Debtor And Corporate Debtors To (I) Extend Deadline For Corporate Debtors To File Proofs Of Claims And (II) Extend Deadline For Corporate Debtors To Object To Dischargeability Pursuant to Bankruptcy Code Sections 523(a) And 1005(a) And Bankruptcy Rule 4007(c)* [Docket No. 67], which set the Corporate Debtors' bar date through and including May 29, 2026 and the Corporate Debtors' deadline for any objection to dischargeability in the Brahmbhatts' Bankruptcy Case through and including May 29, 2026.

9. On May 21, 2026, the Court entered the *Amended Fourth Stipulation And Order Between Individual Debtor And Corporate Debtors To (I) Extend Deadline For Corporate Debtors To File Proofs Of Claims And (II) Extend Deadline For Corporate Debtors To Object To Dischargeability Pursuant to Bankruptcy Code Sections 523(a) And 1005(a) And Bankruptcy Rule 4007(c)* [Docket No. 78], which set the Corporate Debtors' bar date through and including June 15, 2026 and the Corporate Debtors' deadline for any objection to dischargeability in the Brahmbhatts' Bankruptcy Case through and including June 15, 2026.

10. On June 10, 2026, the Court entered the *Fifth Stipulation And Order Between Individual Debtor And Corporate Debtors To (I) Extend Deadline For Corporate Debtors To File Proofs Of Claims And (II) Extend Deadline For Corporate Debtors To Object To Dischargeability Pursuant to Bankruptcy Code Sections 523(a) And 1005(a) And Bankruptcy Rule 4007(c)* [Docket No. 85], which set the Corporate Debtors' bar date through and including July 15, 2026 and the Corporate Debtors' deadline for any objection to dischargeability in the Brahmbhatts' Bankruptcy Case through and including July 15, 2026.

11. On July 13, 2026, the Court entered the *Sixth Stipulation And Order Between Individual Debtor And Corporate Debtors To (I) Extend Deadline For Corporate Debtors To File Proofs Of Claims And (II) Extend Deadline For Corporate Debtors To Object To Dischargeability Pursuant to Bankruptcy Code Sections 523(a) And 1005(a) And Bankruptcy Rule 4007(c)* [Docket No. 89], which set the Corporate Debtors' bar date through and including July 31, 2026 and the Corporate Debtors' deadline for any objection to dischargeability in the Brahmbhatts' Bankruptcy Case through and including July 31, 2026.

12. On July 28, 2026, the Court entered the *Seventh Stipulation And Order Between Individual Debtor And Corporate Debtors To (I) Extend Deadline For Corporate Debtors To File*

*Proofs Of Claims And (II) Extend Deadline For Corporate Debtors To Object To Dischargeability Pursuant to Bankruptcy Code Sections 523(a) And 1005(a) And Bankruptcy Rule 4007(c)* [Docket No. 96], which set the Corporate Debtors' bar date through and including August 31, 2026 and the Corporate Debtors' deadline for any objection to dischargeability in the Brahmbhatts' Bankruptcy Case through and including August 31, 2026.

II. General Case Background

13. On August 12, 2025, each of BTI, BVI, BB Servicer, LLC, Carriox Telecap LLC, and Carriox Towercap LLC, (the "Initial Corporate Debtors") filed a voluntary petition for relief under the Bankruptcy Code (collectively, the "Initial Corporate Debtors Bankruptcy Cases").

14. The Initial Corporate Debtors continue to operate their businesses and manage their property as debtors and debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Initial Corporate Debtors Bankruptcy Cases. As of the date hereof, no official committee of unsecured creditors has been appointed or designated in the Initial Corporate Debtors Bankruptcy Cases.

15. By Order dated September 17, 2025 [Corporate Debtors ECF[2] No. 40], the Court granted the Initial Corporate Debtors' request for the procedural consolidation and joint administration of the Initial Bankruptcy Cases pursuant to Rule 1015(b) of the Bankruptcy Rules.

16. Relatedly, on August 22, 2025, the Initial Corporate Debtors filed that certain *Debtors' Motion to Approve (I) Retention and Employment of Robert Warshauer as Independent Director of the Debtors Nunc Pro Tunc to August 21, 2025; (II) Retention and Employment of John D. Baumgartner as Chief Restructuring Officer of the Debtors, Nunc Pro Tunc to the Petition Dates; and (III) Approving and So Ordering Proposed Stipulation Setting Forth the Terms of an*

---

2"Corporate Debtors ECF No." shall refer to the docket *In re Broadband Telecom, Inc. et al.*, Case No. 25-73095.

*Agreement Between the Debtors, SPVs, Bankim Brahmbhatt, Agent, and Lenders* (the "Motion to Approve") [Corporate Debtors ECF No. 17], which motion was subsequently granted by the Court on September 17, 2025 (the "Stipulation, ID, And CRO Order") [Corporate Debtors ECF No. 41]. The Stipulation, ID, And CRO Order authorized, *inter alia*, the retention and employment of (i) Robert Warshauer as Independent Manager or Independent Director (as defined in the Motion to Approve), as applicable, of the Initial Corporate Debtors, and (ii) John Baumgartner as CRO of the Initial Corporate Debtors.

17. BTI and BVI each own 50% of the equity interests in BB Capital SPV LLC. *See* First Day Declaration, ¶8. Carriox Capital II LLC, Carriox Telecap LLC, and Carriox Towercap LLC are wholly owned subsidiaries of Carriox Holding LLC. *Id.* at 12.

18. On October 20, 2025, each of BB Capital SPV, LLC and Carriox Capital II LLC (the "Subsequent Corporate Debtors") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Subsequent Corporate Debtors Bankruptcy Cases" and together with the Initial Bankruptcy Cases, the "Corporate Debtors Bankruptcy Cases").

19. The Subsequent Corporate Debtors continue to operate their businesses and manage their property as debtors and debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Subsequent Corporate Debtors Bankruptcy Cases. As of date hereof, no official committee of unsecured creditors has been appointed or designated in the Subsequent Corporate Debtors Bankruptcy Cases.

20. On November 6, 2025, the Court entered that certain Order Pursuant to 11 U.S.C. §105(a) and Rule 1015(b) of the Federal Rules of Bankruptcy Procedure Directing (i) That Certain Orders in the Chapter 11 Cases of Broadband Telecom, Inc., et al., Be Made Applicable to Subsequent Corporate Debtors, and (ii) Joint Administration of Subsequent Bankruptcy Cases.

[Corporate Debtors ECF No. 91].

21. An accounting of the events precipitating the Corporate Debtors Bankruptcy Cases is included in the *Declaration of John D. Baumgartner, Chief Restructuring Officer, in Accordance with Rule 1007 of the Federal Rules of Bankruptcy Procedure and Local Rule 1007-4* (the "First Day Declaration") [Corporate Debtors ECF No. 36], which is incorporated herein by reference. As disclosed in the First Day Declaration, one of the most pressing events leading to the commencement of the Bankruptcy Cases was the commencement by the Corporate Debtors' secured lenders of the DE Chancery Court Action against each of the Corporate Debtors and their principals, including Bankim Brahmbhatt, the issuance of a temporary restraining order, and the secured lenders' request for the appointment of a receiver, all based upon allegations that called into question the legitimacy of the Corporate Debtors' reporting regarding their business operations.

III. Relevant Background

**a. The Corporate Debtors.**

22. BB Capital SPV LLC's main operational focus is to hold loans and provide factoring services to BTI and BVI.

23. BTI and BVI are wholly owned subsidiaries of BB Carrier LLC (the "BB Carrier"), and were incorporated under the laws of the state of California and Delaware on March 14, 2005 and August 25, 2008, respectively.

24. Prior to the commencement of the Initial corporate Debtors Bankruptcy Cases, BTI and BVI provided voice termination services across the world. Operations mainly consisted of a wholesale trading business in which originating telecommunication carriers are interconnected via Voice over Internet Protocol ("VOIP") in which the traffic is routed over the BTI and BVI networks

to local service providers and telecommunication carriers in the destination countries with whom they have established agreements to manage the completion or termination of calls. Upon providing services, BTI and BVI invoiced their customers and thereby generated receivables. BB Capital purchased the receivables of BTI and BVI, thereby providing BTI and BVI with working capital.

25. BB Servicer is a wholly owned subsidiary of BB Carrier and was organized under the laws of the state of Delaware. BB Servicer is a servicer for Broadband Telecom and Bridgevoice.

26. Carriox Telecap and Carriox Towercap are wholly owned subsidiaries of Carriox Holding LLC ("Carriox Holding"), and were incorporated under the laws of the state of Delaware in November 2020. Prior to the Petition Date, Carriox Telecap and Carriox Towercap provided factoring services to the wholesale VoIP carrier industry, SMS carriers, and cell tower infrastructure companies (the "Carriox Factoring Clients") by purchasing from the Carriox Factoring Clients, at a discount, the receivables the Carriox Factoring Clients generate by providing telecom services to their customers. Carriox Telecap and Carriox Towercap, in turn, sold the receivables they purchase from the Carriox Factoring Clients to Carriox Capital II LLC ("Carriox Capital" and together with BB Capital, the "SPVs"), which is also a wholly owned subsidiary of Carriox Holding.

27. On July 24, 2025, the Lenders commenced the DE Chancery Court Action against the Corporate Debtors, Brahmbhatt, and Jigar Bhatt.

28. On August 8, 2025, the Delaware Chancery Court issued a temporary restraining order prohibiting the Corporate Debtors and Brahmbhatt from, among other things, (i) transferring

assets, (ii) purchasing receivables and (iii) transacting any business with a value in excess of $5,000, absent consent from the Lenders.

29. The Corporate Debtors commenced the Corporate Debtors Bankruptcy Cases to provide an opportunity to reorganize their businesses in the face of significant liquidity issues and the threat of pending litigation with the Lenders, who, as noted above, obtained entry of a temporary restraining order in the DE Chancery Court Action, which effectively froze the Corporate Debtors' operations, and who have also sought the appointment of a receiver in the DE Chancery Court Action

30. The Lenders expressed concerns and a lack of confidence in the ability of the Corporate Debtors' then-management to manage the Corporate Debtors' day to day affairs and oversee the Corporate Debtors Bankruptcy Cases.

31. In the Corporate Debtors Bankruptcy Cases, the Corporate Debtors, Brahmbhatt, and the Lenders agreed to the terms of a Stipulation, which provides, *inter alia*, for the appointment of the Independent Director and the CRO of the Corporate Debtors.

32. As contemplated by the Stipulation, on August 21, 2025, Brahmbhatt, in his capacity as the applicable member, manager, and officer of the Corporate Debtors respectively, executed written consents and resolutions authorizing the appointment the Independent Director and CRO.

33. On September 17, 2025, the Court approved the Corporate Debtors' motion to approve the Stipulation. [ECF No. 41].

*b. Bankai Infotech*

34. In October 2022, Bankai Infotech's predecessor in interest, Panamax Infotech Limited, including its subsidiaries, holding companies, group companies, sister concern, affiliates,

successors and permitted assigns, and BTI, including its present and future parent companies, holding companies, subsidiaries, group companies, sister concerns, affiliates, associated entities, joint ventures, successors, and permitted assigns, entered into that certain *Business Outsourcing Services Agreement (*the "Outsourcing Agreement") dated as of October 1, 2022, whereby the Corporate Debtors, through BTI, agreed to outsource to Bankai Infotech, and Bankai Infotech agreed to provide, substantially all administrative business functions related to the operations of the Corporate Debtors' businesses. Pursuant to the Outsourcing Agreement, Bankai Infotech agreed to provide services to the Corporate Debtors under the following categories:

- Sales
- Network Operation
- Rates and Routing
- Revenue Assurance and Internal Audit
- Finance and Accounts
- Legal
- Marketing
- Human Resources
- Inside Sales
- Business Quality Assurance
- Delivery and Support
- Pre Sales
- Operations
- Product Management
- Research and Development

35. Notably, Section 1 of the Outsourcing Agreement provides that "[BTI] may, by written request, authorize any of its Affiliates to receive Services under this Agreement without the need for a separate agreement. Such Affiliates shall be deemed to be bound by the terms and conditions of this Agreement as if they were an original party hereto."

36. The CRO understands that Bankai Infotech holds direct access to and control over the Corporate Debtors' Servers, which, as set forth below, are held and maintained at the Co-

Location Sites, as well as the emergency back-up copies of the Corporate Debtors' Servers.

37. On October 27, 2025, the CRO sent a letter to Bankai Infotech wherein he requested that Bankai Infotech provide, among other things, "[l]ogin/access credentials for myself, as CRO, and any member of my team upon written confirmation of same, for full and complete access for all data, infrastructure, servers, email accounts and archives, documents and premises." Despite such request, to date Bankai Infotech has not provided the requested login credentials and has not provided access to all data, infrastructure, servers, documents, and premises.

38. From November 12-23, 2025, the CRO travelled to India for a site visit and to meet with representatives of Bankai Infotech in its offices, including to inspect the operations as they pertain to the Corporate Debtors and to conduct an audit in accordance with Section 4.7 of the Outsourcing Agreement. Despite the CRO's requests including during the site visit, and despite its contractual obligation to do so, Bankai Infotech has not provided the Corporate Debtors with direct access to "all data, infrastructure, servers, documents and premises."

39. Although they have been provided access to a copy of the Corporate Debtors' purported QuickBooks account platform, which was prepared and maintained by Bankai Infotech, the Corporate Debtors have not been provided with direct access to the Servers, the Microsoft Office 365 platform, or any other data or source documents. All information provided to date has been prepared by Bankai Infotech and no access to first-hand source data has been provided other than with respect to access granted to QuickBooks.

40. To date, and despite due demand, the Corporate Debtors have been unable to obtain direct access to or copies of the data stored on the Servers or any backup. The Corporate Debtors' access to this data and information is integral to the continued operation of their businesses and any analysis of the operations and financial history of the Corporate Debtors.

41. Having been denied direct access by Banki Infotech to their own books and records, the Corporate Debtors must seek information and relevant materials from other sources. Given his former role as the Corporate Debtors' CEO, president or managing member, as applicable, of the Corporate Debtors, it is likely that Brahmbhatt has substantial knowledge regarding the Corporate Debtors' assets and operations and may also be in the possession, custody or control or documents and electronical stored information concerning the Corporate Debtors' assets and liabilities and its historic operations. Brahmbhatt may also have the necessary software and access credentials for the Corporate Debtors' operating systems including the Servers and the Corporate Debtors should be entitled to seek that information in an examination of Brahmbhatt under oath.

**II. The 2004 Application, Rule 2004 Order, and Brahmbhatt's Noncompliance**

42. On April 14, 2026, the Court entered the Rule 2004 Order granting the Corporate Debtors' 2004 Application. *See* Docket No. 70.

43. In accordance with the Rule 2004 Order, the Corporate Debtors duly served Brahmbhatt with the Subpoena and a copy of the Rule 2004 Order on April 20, 2026. A copy of the complete Subpoena is attached to the Jureller Declaration as Exhibit A.

44. Thereafter, the Subpoena was sent to Brahmbhatt's counsel by email on April 21, 2026. Receipt of the Subpoena was acknowledged.

45. In accordance with the Rule 2004 Order, Brahmbhatt was required to respond to the Subpoena within fourteen (14) days of its service, *i.e.*, by May 5, 2026.

46. After a series of discussions and extensions, Brahmbhatt served the Brahmbhatt Response to the Subpoena by email on June 8, 2026, although no responsive documents were produced at that time. It was explained that responsive documents were being extracted from Brahmbhatt's "devices" by a third-party vendor which would take approximately three (3) weeks.

47. On July 9, 2026, the Corporate Debtors were advised that "the vendor took much longer than anticipated but the upload is now complete and searches are being run for responsive documents", with further updates to be provided on July 14, 2026.

48. On July 16, 2026, the Corporate Debtors again followed up on the status of production. On July 20, 2026, the Corporate Debtors were advised that a further update would be provided by July 22, 2026. A further Zoom call was held on July 29, 2026 prior to filing this Motion.

49. To date, despite more than seven (7) weeks elapsing since the date of the service of the Brahmbhatt Response, and more than three (3) months since the service of the Subpoena, no documents have been produced by Brahmbhatt, despite the fact that he was the CEO, president and/or managing member of the Debtors and the beneficial owner of the Debtors and their affiliates.

50. Based upon the foregoing, the Corporate Debtors believe that an order compelling Brahmbhatt's immediate compliance with the 2004 Order is necessary at this time.

**RELIEF REQUESTED**

51. The Corporate Debtors request entry of an Order compelling Brahmbhatt to comply with the Rule 2004 Order and to produce documents responsive to the Subpoena by a date certain.

52. "A bankruptcy court possesses the inherit power to enforce compliance with its lawful orders . . . ." *In re Stockbridge Funding Corp.*, 145 B.R. 797, 803 (Bankruptcy S.D.N.Y. 1992), *aff'd in part and vacated in par*t, 158 B.R. 914 (S.D.N.Y. 1993); *In re Nunez*, Nos. 98-CV-7077 (CBA), 98-CV-7078 (CBA), 2000 WL 655983, at *8 (E.D.N.Y. Mar. 17, 2000) ("A bankruptcy court does have the inherent power . . . 'to hold parties in civil contempt for violation of its own orders.'" (quoting *BNY Fin. Corp. v. Masterwear Corp. (In re Masterwear Corp.)*, 229

B.R. 301, 310 (Bankr. S.D.N.Y. 1999)); *see also Bowens v. Atlantic Maintenance Corp.*, 546 F.Supp.2d 55 (E.D.N.Y. 2008) (federal courts have "the inherent power to . . . enforce compliance with an order") internal quotation marks omitted)); *U.S. Lines, Inc. v. GAC Marine Fuels, Ltd. (In re McLean Indus.)*, 68 B.R. 690, 695 (Bankr. S.D.N.Y. 1986) ("The duty of any court to hear and resolve legal disputes carries with it the power to enforce the order.").

53. The ability to enforce orders and judgments "is essential to the orderly administration of justice." *In re Patterson*, 11 B.R. 395, 397 (Bankr. N.D.N.Y 1989) (internal quotation and citation omitted).

54. This Court's authority to enforce its orders is also articulated in Bankruptcy Code Section 105(a), which provides:

> The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the Court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement Court orders or rules, or to prevent an abuse of process.

*See also In re River Center Holdings*, LLC, 394 B.R. 704, 711 (Bankr. S.D.N.Y. 2008) ("[S]ection 105(a) plainly may be used 'to enforce and implement' earlier orders."); *NWL Holdings, Inc. v. Eden Center, Inc. (In re Ames Dept. Stores, Inc.)*, 317 B.R. 260, 273-74 (Bankr. S.D.N.Y. 2004) ("[I]t is manifestly proper . . . to invoke section 105(a) 'to enforce or implement' the Court's earlier orders, and to prevent abuses of process.").

55. The Rule 2004 Order is clear and unambiguous – it authorizes the service of subpoenas by the Corporate Debtors upon Brahmbhatt and requires a response within fourteen (14) days of service thereof.

56. In an effort to consensually resolve this matter, the Corporate Debtors held a series of discussions and meet and confer sessions with Brahmbhatt's counsel and in good faith consented to extensions of the deadlines. However, after more than seven (7) weeks since the Brahmbhatt Response was served and three (3) months since the service of the Subpoena, no responsive documents have been produced by Brahmbhatt.

57. The Corporate Debtors believe that Brahmbhatt has documents and information in his possession that are relevant to the Corporate Debtors' business and operations, as well as the ongoing investigation of the Applicants. However, to date Brahmbhatt has failed to comply with the Subpoena.

58. The Corporate Debtors believe that without an order from this Court compelling Brahmbhatt to comply and produce responsive documents by a date certain, Brahmbhatt will continue to ignore the Rule 2004 Order and Subpoena.

**NOTICE**

59. Notice of this Motion will be given to Brahmbhatt by his counsel of records and the Office of the United States Trustee. The Corporate Debtors respectfully submit that such notice is sufficient and that no other or further notice of the relief requested herein is necessary or appropriate.

**PRIOR RELIEF**

60. No request for the relief sought in this Motion has been made to this or any other Court.

**WHEREFORE**, the Corporate Debtors respectfully request that this Court enter an order, in substantially the same form as the Proposed Order attached as **Exhibit A**, granting the relief requested herein together with such other and further relief as the Court determines to be just and proper.

Dated: New York, New York
July 29, 2026

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

By: */s/ John E. Jureller, Jr.*

Tracy L. Klestadt
John E. Jureller, Jr.
Brendan M. Scott
Andrew C. Brown
Kevin Collins
286 Madison Avenue, 11th Floor
New York, New York 10017
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: tklestadt@klestadt.com
jjureller@klestadt.com
bscott@klestadt.com
abrown@klestadt.com
kcollins@klestadt.com

*Counsel to the Corporate Debtors*