B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

Eastern District of New York

In re Bankim Brahmbhatt
Debtor

Case No. 25-73100 (LAS)

Chapter 11

## SUBPOENA FOR RULE 2004 EXAMINATION

To: Bankim Brahmbhatt c/o Scott Markowitz, Esq., Tarter Krinsky & Drogin, 1350 Broadway, New York, NY 10018
*(Name of person to whom the subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| To be determined at a later date and time. | To be determined at a later date and time. |

The examination will be recorded by this method: video recording and stenograph

☑ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See attached Exhibit B. Production to KWJS&S, LLP, 200 W. 41st Street, 17th Fl., New York, NY 10036, Attn: John E. Jureller, Jr. on or within 14 days after the date of service.

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 3/20/2026

CLERK OF COURT

OR

________________________ /s/ John E. Jureller, Jr.
*Signature of Clerk or Deputy Clerk* *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Broadband Telecom, Inc. et al., who issues or requests this subpoena, are:

John E. Jureller, Jr., Klestadt Winters Jureller Southard & Stevens, LLP, 200 W. 41st St., 17th Fl., New York, NY 10036, email: jjureller@klestadt.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: ________________________________________________
on *(date)* __________ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____________________________________
____________________________________________________________________________________________________
___________________________________ on (*date*) ___________________ ; or

☐ I returned the subpoena unexecuted because: ______________________________________________________________
____________________________________________________________________________________________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ ________________________ .

My fees are $ _________ for travel and $_________ for services, for a total of $_________ .

I declare under penalty of perjury that this information is true and correct.

Date: _______________

_______________________________________________
*Server's signature*

_______________________________________________
*Printed name and title*

_______________________________________________
*Server's address*

Additional information concerning attempted service, etc.:

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| BANKIM BRAHMBHATT, | : | |
| | : | Case No. 25-73100 (LAS) |
| | : | |
| | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |

**ORDER AUTHORIZING ISSUANCE OF SUBPOENAS**
**FOR THE PRODUCTION OF DOCUMENTS AND**
**EXAMINATION OF BANKIM BRAHMBHATT**

Upon the *ex parte* motion (the "Motion") [ECF No. 69], of Broadband Telecom, Inc., Bridgevoice, Inc., BB Servicer, LLC, Carriox Telecap LLC, Carriox Towercap LLC, BB Capital SPV, LLC, and Carriox Capital II LLC (collectively, the "Movants"), pursuant to Bankruptcy Rule 2004, for an order seeking authorization to issue subpoenas directing (i) the production of documents by Bankim Brahmbhatt (the "Examinee")[1] responsive to the requests set forth in the schedule entitled *Requests for Production of Documents and Things* attached to the Motion (the "Requests") and (ii) the oral examination, under oath, of the Examinee; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by Order dated December 5, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor; it is hereby

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

**ORDERED**, that the Motion is granted on the terms set forth herein; and it is further

**ORDERED**, that the Movants are authorized under Bankruptcy Rules 2004 and 9016, to issue such subpoena as may be necessary to compel the production of documents responsive to the Requests and the testimony of Examinee; and it is further

**ORDERED**, that unless otherwise agreed to by the Movants, the Examinee shall have fourteen (14) days from the service of a subpoena and a copy of the Motion and this Order to either (1) produce to the Movants all responsive documents requested in the Movants' subpoena, other than those documents withheld under a claim of privilege or (2) file with this Court an objection or response to the subpoena; and it is further

**ORDERED**, that all disputes concerning the subpoenas, including objections thereto, that are not resolved by agreement of the parties may be raised only by letter brief to the Court not exceeding five pages, single spaced. The other party shall file a responsive letter brief within three business days, which shall not exceed five pages, single spaced. Copies of such letter briefs shall also be emailed to the Court's chambers. After reviewing the letter briefs, the Court will determine whether argument will be heard and, if so, advise the parties of the argument date; and it is further

**ORDERED**, that unless otherwise agreed to by the Movants, if the Examinee withholds any documents from the production based upon a claim of privilege, the Examinee is directed to provide counsel for the Movants with a privilege log, containing the information required under Bankruptcy Rule 7026 and E.D.N.Y. L.B.R. 7026-1, within fourteen (14) days of the service of a subpoena and a copy of the Motion and this Order on the Examinee; and it is further

**ORDERED**, that the Examinee is directed to submit to oral examination upon reasonable notice and, absent other agreement with the Movants, in no event more than fifteen (15) days from the date of the service of a deposition subpoena and a copy of the Motion and this Order upon the Examinee; and it is further

**ORDERED**, that nothing herein shall limit the rights of the Examinee under applicable law to object to or oppose any subpoena the Movants may serve upon the Examinee; and it is further

**ORDERED**, that in accordance with Bankruptcy Rules 2004 and 9016, (i) the Clerk of this Court shall issue subpoenas, signed, but otherwise in-blank, as requested by the Movants, or (ii) provided that counsel for the Movants is authorized to practice in this Court, counsel may issue and sign the subpoenas; and it is further

**ORDERED,** that service of any subpoena issued pursuant to this Order may be effectuated upon Examinee by delivering a copy to Examinee's counsel in this Chapter 11 case via first class mail, postage prepaid; and it is further

**ORDERED**, that the Movants shall file with the Court an affidavit or declaration of service for each subpoena Movants serve; and it is further

**ORDERED**, that this Order is without prejudice to the Movants' right to file further motions seeking additional documents and testimony pursuant to Bankruptcy Rule 2004(a) or any other applicable law; and it is further

**ORDERED**, that this Court shall retain jurisdiction to resolve any disputes arising or related to this Order including any discovery disputes that may arise between or among the parties and to interpret, implement, or enforce the provisions of this Order.

**Dated: April 14, 2026**
**Central Islip, New York**

Louis A. Scarcella
United States Bankruptcy Judge

# EXHIBIT B

**REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

**(*BANKIM BRAHMBHATT*)**

**DEFINITIONS**

i. "Bankai Infotech" means Bankai Infotech Limited, together with its agents, representatives. attorneys, accountants, financial advisers, investment advisers, consultants, predecessors, successors, assignees, or any other person or entity subject to its practical control, including without limitation, Panamax Infotech Limited.

ii. "CDC" means Coresite Data Center LLC, Coresite Data Center Services, Inc., Coresite LLC, and Coresite 32 Avenue of the Americas LLC, together with their agents, representatives. attorneys, accountants, financial advisers, investment advisers, consultants, predecessors, successors, assignees, or any other person or entity subject to its practical control.

iii. "Co-Location Agreement" means that certain co-location agreement between Coresite Data Center LLC and Panamax Inc., pursuant to which the Debtors' Servers are housed at the Co-Location Site.

iv. "Co-Location Site" shall mean the co-location site facility located at 32 Avenue of the Americas, New York, New York 10013 (or such other locations as appropriate), which facility is owned or operated by Coresite Data Center LLC.

v. "Communications" means and includes all oral and written communications of any nature, type or kind including, but not limited to, any Documents, telephone conversations, discussions, meetings, facsimiles, e-mails, text messages, WhatsApp conversations, pagers, memoranda, and any other medium through which any information is conveyed or transmitted

vi. "Concerning" means and includes relating to, constituting, defining, evidencing, mentioning, containing, describing, discussing, embodying, reflecting, edifying, analyzing, stating, referring to, dealing with, or in any way pertaining to.

vii. "Credit Agreement" means the credit agreement dated as of August 6, 2024 (as amended, supplemented, restated or otherwise modified from time to time, including as amended by the First Amendment to Credit Agreement, dated as of July 1, 2025), among BB Capital SPV, LLC and Carriox Capital II LLC, as borrowers, BB Servicer, LLC, Carriox Telecap LLC and Carriox Towercap LLC, as servicers, Bridgevoice, Inc. and Broadband Telecom, Inc., as receivables generators, the limited guarantor parties thereto, the lenders parties thereto, and Alter Domus (US) LLC, as administrative agent and collateral agent, including all exhibits and incorporated documents thereto, as well as any drafts or prior iterations of this document.

viii. "Customer" means any Person to whom any of the Debtors provided or purported to provide any goods, products or services, including without limitation, any telecommunications services and any factoring services.

ix. "Debtors" means collectively, BB Servicer, LLC, Carriox Telecap LLC, Carriox Towercap LLC, Bridgevoice, Inc., Broadband Telecom, Inc., BB Capital SPV, LLC and Carriox Capital II LLC, together with their respective agents, representatives. attorneys, accountants, financial advisers, investment advisers, consultants, predecessors, successors, assignees, or any other person or entity subject to his practical control.

x. "Debtors' Servers" means all servers owned, leased, maintain, operated, or controlled, either directly or indirectly, by the Debtors including any of the Debtors' servers located, stored, maintained, protected or otherwise held at the Co-Location Site.

xi. "Document" shall be construed to the fullest extent under the Federal Rules of Civil Procedure and shall mean, without limitation, the original and all copies and translations of any Information in any written, recorded, electronic, or graphic form, including all memoranda, notes, interoffice and intraoffice communications, telegrams, telecopies, letters, reports, stenographic

notes, bulletins, notices, emails, text messages or other messaging-application messages, instant messages or other electronic-chat messages, telephonic or personal communications, computer models, spreadsheets, data, accounts, records, calendars, diaries, minutes, contracts or other legal papers, resolutions, written policies or procedures, insurance policies, audio records, photographs, microform, film, and any electronically stored Information stored in any medium including computer backup devices in Your possession, custody, or control or the possession, custody, or control of Your attorneys, agents, or other Persons under Your control. Without limiting the foregoing, "Document" includes any copy that differs in any respect from the original or other versions of the document, such as copies containing notations, insertions, corrections, margin notes, or any other variations. The term "Document" includes Communications.

xii. "Electronically Stored Information" or "ESI" means, without limitation, all information contained on any computing device owned, maintained, or otherwise controlled by you, including, but not limited to, mainframe, desktop, laptop, tablet, or palmtop computers, network servers, telephone voicemail servers, employees' employer-provided home computers, and the personal digital assistants (PDAs), digital cell phones, telephone answering machines, pagers, or other information-storing electronic devices of you and your employees, or on associated external storage media, backup tapes, and other archival copies of same. Unless otherwise specified, documents, reports, and other Electronically Stored Information created using any version of Microsoft Word, Powerpoint, Excel, Visio, or Access, Word Perfect, Oracle, or any other Microsoft, Adobe, or other currently available "off-the-shelf application shall be produced in native form; that is, the form in which the document is currently stored on whatever media it currently resides. The document should not be locked, resaved, restructures, "scrubbed" of unapparent or hidden content or any other data or metadata, but rather should be produced in a

copy precisely reproducing its entire state as present in your systems. Unless otherwise specified, electronic mail (e-mail) should be produced in native form; that is, in whatever database and/or file/directory structures are used by your mail processing software. All metadata and other unapparent or hidden data related to mail messages shall be produced, including, but not limited to, any file attachments, message priority flags, message read/access timestamps, and, in the case of e-mail sent to distribution lists, information on the membership of such lists at the time the e-mail was sent.

xiii. "Financial Statements" mean any and all Documents that reflect the financial condition, performance, or cash flows of the Debtors, including all notes, footnotes, schedules, and other supplemental disclosures or attachments thereto, whether prepared monthly, quarterly, annually, or on any other periodic basis, and whether audited, unaudited, consolidated, or unconsolidated

xiv. "Outsourcing Agreement" means that certain Business Outsourcing Services Agreement, dated as of October 1, 2022 by and between Panamax Infotech Limited together with its Subsidiaries, Holding Companies, Group Companies, Sister Concern, Affiliates successors and permitted assigns on one hand and Broadband Telecom, Inc., together with its present and future parent companies, holding companies, subsidiaries, group companies, sister concerns, affiliates, associated entities, joint ventures, successors, and permitted assigns.

xv. "Person" means and includes individuals and entities, corporations, partnerships, unincorporated associations, limited liability companies, trusts, firms, cooperatives, fictitious business names, governmental agencies whether local, state, or federal, and any and all of their agents, representatives, employees, predecessors, and/or any other Person acting on its/their behalf or subject to its/their control.

xvi. “Receivable” has the meaning set forth in Section 1.1 of the Credit Agreement.

xvii. “Relevant Period” means the period from January 1, 2020 through present.

xviii. “Term Loans” mean the Facility A Term Loan and the Facility B Term Loan, as defined in Section 1.1 of the Credit Agreement.

xix. “You and “Your” means Bankim Brahmbhatt, and the possessive form thereof.

**REQUESTS**

1. All passcodes, passkeys, log-in credentials, identification codes, or other access codes necessary for direct access to the Debtors’ Documents, Communications and Electronically Stored Information inclusive of emails as stored or archived on the Debtors’ Servers.

2. All passcodes, passkeys, log-in credentials, identification codes, or other access codes necessary for direct access to the Debtors’ Documents, Communications and Electronically Stored Information inclusive of emails as stored or archived on Microsoft Office 365, any other platform, or any cloud-based system or storage.

3. All Documents, Communications, and Electronically Stored Information concerning the Debtors in Your possession, custody or control.

4. All Communications between any of the Debtors and any of the Debtors’ Customers during the Relevant Period

5. All Communications between any of the Debtors and any of the Debtor’s vendors during the Relevant Period.

6. All Communications between Bankai Infotech and any of the Debtors’ Customers during the Relevant Period.

7. All Communications between Bankai Infotech and any of the Debtor’s vendors during the Relevant Period.

8. All Communications between Bankai Infotech and any of the Debtors' during the Relevant Period.

9. All Financial Statements prepared by, for or on behalf of the Debtors during the Relevant Period.

10. All balance sheets prepared by, for or on behalf of the Debtors during the Relevant Period.

11. All profit and loss statements and cash flow statements prepared by or on behalf of the Debtors during the Relevant Period.

12. All Documents, Communications and Electronically Stored Information related to any "bad debt" write offs by the Debtors on their respective books and records, including without limitation, the decisions for such write off, the invoices or other statements being written off, any efforts to collect the debts or obligations, and any litigation or other enforcement efforts commenced with respect to the outstanding obligations, and any Communications with Bankai Infotech related thereto.

13. All bank statements, transaction records, wire transfer confirmations, ACH records, cancelled checks, deposit slips, and other documents concerning transactions for and from all bank accounts, financial accounts, and cryptocurrency wallets owned, controlled, or beneficially owned by any Debtor or You.

14. All general ledgers for all Debtors for the period from September 25, 2020 through the present, including electronic data files showing transaction ID, transaction amount, transaction date, account number and name, and transaction description

15. All Documents, Communications, and Electronically Stored Information concerning Receivables, including: (i) all agreements, and amendments thereto; (ii) all drafts of

such agreements; (iii) all confirmations of receivables owed and balance verifications; (iv) all invoices and supporting documentation; and (v) contact information for representatives of such companies during the Relevant Period, including without limitation Receivables of the following:

a) Advanced Info Service Public Company Limited;

b) America Movil Peru S.A.C.;

c) Belgacom International Carrier Services SA;

d) CETIN a.s.;

e) Compañía de Telecomunicaciones de El Salvador, S.A. de C.V. (also known as Claro El Salvador);

f) Deutsche Telekom AG;

g) Digi Telecommunications Sdn. Bhd;

h) Far EasTone Telecommunications Co., Ltd.;

i) Itissalat Al-Maghrib S.A. (also known as Maroc Telecom);

j) NTT Communications Corporation (now known as NT Docomo Business, Inc.);

k) PLDT Inc.;

l) Safaricom PLC;

m) Singapore Telecommunications Limited (also known as Singtel);

n) Swisscom AG;

o) T-Mobile Czech Republic a.s.;

p) Taiwan Mobile Co., Ltd.;

q) Telavox AB;

r) Telecom Italia Sparkle S.p.A.;

s) Telefonica Global Solutions S.L.U.;

t) Telenet Group Holding NV;

u) Telstra Corporation Limited (now known as Telstra Group Limited);

v) Virgin Media Limited.

16. To the extent not produced in response to Request No. 14 above, all Documents, Communications, and Electronically Stored Information concerning the Debtors' Customer contracts during the Relevant Period.

17. To the extent not produced in response to Request No. 14 above, all Documents, Communications, and Electronically Stored Information concerning the Debtors' vendor invoices during the Relevant Period.

18. All Documents, Communications, and Electronically Stored Information concerning Crestline Investors, Inc., including without limitation, all communications with Crestline Investors, Inc. or any of its affiliates or representatives including Rahul Vaid related to (a) the Credit Agreement or Term Loans; (b) Receivables; or (c) refinancing any debt owed to Crestline with another lender or investor.

19. All Documents, Communications, and Electronically Stored Information with any of the Debtors' auditors, including without limitation concerning Receivables and revenue recognition.

20. All Documents and Electronically Stored Information concerning all audits or other reviews of the Debtors' Financial Statements, including work papers during the Relevant Period.

21. All Documents, Communications, and Electronically Stored Information concerning payroll records for any Person who provided services to or for the benefit of the

Debtors since January 1, 2020, including without limitation services provided under the Outsourcing Agreement.

22. All Documents, Communications, and Electronically Stored Information concerning invoices delivered by Bankai Infotech to the Debtors for services rendered since the inception of the relationship between Bankai Infotech and the Debtors.

23. All Documents, Communications, and Electronically Stored Information concerning the Debtors' accounts receivable management system used during the Relevant Period.

24. All Documents, Communications, and Electronically Stored Information concerning the Debtors' corporate records, including without limitation, board minutes, board resolutions, and the appointment of officers and directors during the Relevant Period, including without limitation any drafts and other documents referencing or concerning board minutes, board resolutions, and the appointment of officers and directors.

25. All organizational charts for any and all affiliates of the Debtors.

26. All Documents, Communications, and Electronically Stored Information concerning invoices, billing and collection records for each of the Debtors during the Relevant Period, including on the "Bill Pay" system.

27. All Communications with Customers or clients of the Debtors related to billing, invoices, services, collections, and related matters during the Relevant Period, including without limitation, all communications stored on Microsoft Office 365.

28. All Documents, Communications, and Electronically Stored Information concerning Bankai International Pvt LTD during the Relevant Period including without limitation invoices, billing, payment and collection records, or other records evidencing any transactions between it and the Debtors or services rendered by it to the Debtors..

29. All Documents, Communications, and Electronically Stored Information concerning Maple Gadgets Wholesale FZE during the Relevant Period, including without limitation invoices, billing, payment and collection records, or other records evidencing any transactions between it and the Debtors or services rendered by it to the Debtors.

30. All Documents, Communications, and Electronically Stored Information concerning Panamax, Inc. during the Relevant Period, including without limitation invoices, billing, payment and collection records, or other records evidencing any transactions between it and the Debtors or services rendered by it to the Debtors..

31. All Documents, Communications, and Electronically Stored Information concerning Bankai Infotech during the Relevant Period, including without limitation invoices, billing, payment and collection records, or other records evidencing any transactions between it and the Debtors or services rendered by it to the Debtors.

32. All Documents, Communications, and Electronically Stored Information concerning CallnRoam, Inc. during the Relevant Period, including without limitation invoices, billing, payment and collection records, or other records evidencing any transactions between it and the Debtors or services rendered by it to the Debtors.

33. All Documents and Electronically Stored Information concerning the equity ownership of Carriox Holding LLC.

34. All Documents and Electronically Stored Information concerning the equity ownership of BB Group LLC.

35. All Documents and Electronically Stored Information concerning any Person who controlled Carriox Holding LLC at any time during the Relevant Period.

36. All Documents and Electronically Stored Information concerning any Person who controlled BB Group LLC at any time during the Relevant Period.

37. All Documents and Electronically Stored Information concerning all tax returns including work papers prepared on behalf of the Debtors during the Relevant Period.

38. All Documents, Communications, and Electronically Stored Information concerning all Receivables purchased by any of the Debtors during the Relevant Period, including, without limitation, purchase agreements, copies of the purchased invoices or other proof of such Receivable, and payment or settlement thereof.

39. All Documents, Communications, and Electronically Stored Information concerning any claims made against insurance policy providing coverage concerning any Receivables purchased by the Debtors during the Relevant Period.

40. All Communications between any Persons concerning the collection of any account receivable purchased by any of the Debtors during the Relevant Period.

41. All Documents, Communications, and Electronically Stored Information concerning any account receivable that was purchased by any of the Debtors that has been written off or forgiven in last 3 years.

42. All Documents, Communications, and Electronically Stored Information concerning the Debtors' use of any proceeds of the Terms Loans during the Relevant Period.

43. All Documents, Communications, and Electronically Stored Information concerning any civil action or other enforcement actions taken by or on behalf of the Debtors concerning any account receivable purchased by the Debtors during the Relevant Period.

44. All pay slips, bank statements or similar records sufficient to demonstrate that Bankai Infotech employees, who provided Shared Resources or Dedicated Resources to the

Debtors pursuant to the Outsourcing Agreement, were being paid wages by Bankai Infotech during the Relevant Period.

45. All time records, correspondence and related documents sufficient to identify all Bankai Infotech employees who provided Shared Resources or Dedicated Resources to the Debtors under the Outsourcing Agreement during the Relevant Period.

46. All records sufficient to identify the ownership structure of Bankai Infotech during the Relevant Period, including without limitation, the ultimate beneficial owners, as well as any transfers of equity interests during the Relevant Period, including without limitation, any corporate organizational or other documents filed with any Indian government or regulatory agency, and any licenses or operational agreements.

47. All records sufficient to identify Bankai Infotech's or any other party's shareholder interest in any of the Debtors during the Relevant Period, including without limitation, any corporate organizational or other documents filed with any Indian government or regulatory agency, and any licenses or operational agreements.

48. All Documents, Communications, and Electronically Stored Information to, from, including, concerning or referencing the following website domains or any email address or account utilizing the following domains:

a. nttcommunication.com

b. swisscomag.com

c. taiwanmobiles.com

d. telefonicaglobal.com

e. singtele.net

f. etisalatcommunications.com

g. aispublic.com

h. telekomdeutsche.de

i. telecomviet.com

j. globephilippines.com

k. fareastonetelecom.com

l. pldt-us.com

m. chinamobileinternational.com

n. maroctele.com

o. telekomaustria1.com

p. belgacomics.com

q. cetincz.com

r. telecom-malaysia.com

s. telstra-au.com

t. mobilytelecom[.]com

u. t-mobilepl.com

v. romaniaorange.com

w. americamovilperu.com

49. All Communications with, and/or Documents, Communications, and Electronically Stored Information concerning or referencing, the following email addresses:

x. billing.dept@t-mobilecz.com

y. payable@fareastonetelecom.com

z. financedept@telenetgroupnv.com

aa. accountsdepartment@pldt-us.com

bb. accounts@digitelecommunications.com

cc. financedept@amperusac.com

dd. billing@telesafaricom.com

ee. finance.dept@virgintelemedia.com

ff. finance@clarosalvador.com

gg. accounts@telavoxab.com

50. All Communications with, and/or Documents, Communications, and Electronically Stored Information concerning or referencing, any email account beginning with the letters "vija".

51. All Communications with, and/or Documents, Communications, and Electronically Stored Information concerning or referencing, the domain registration entity Name.com, Inc., including but not limited to any Communications with, and/or Documents, Communications, and Electronically Stored Information concerning or referencing, any email address(es) using the domain "name.com".

52. All Communications with, and/or Documents, Communications, and Electronically Stored Information concerning or referencing, the email services entity Titan Email, including but not limited to any Communications with, and/or Documents, Communications, and Electronically Stored Information concerning or referencing, any email address(es) using the domain "titan.email".

53. All Communications between any entity in which You hold or previously held a management or partial or full ownership position and any of the Debtor's current and former Customers during the Relevant Period.

54. All Communications between any entity in which You hold or previously held a management or ownership position or any other position and any of the Debtor's current and former service providers during the Relevant Period.

55. All Communications between You and any of the Debtors' current and former Customers during the Relevant Period.

56. All Communications between You and any of the Debtors' current and former service providers during the Relevant Period.

57. All Communication between You and Bankai Infotech concerning any of the Debtors during the Relevant Period.

58. All Communications to, from, concerning or including Rahul Vaid concerning the Debtors, including without limitation, (a) the Credit Agreement or Term Loans; (b) Receivables or Receivable confirmations; or (c) any concerns or issues raised regarding the authenticity of Receivables or documents.

59. Without regard to the time period, all Documents, Communications, and Electronically Stored Information concerning any policy, procedure, or practice relating to the Debtors' preservation or destruction of Documents or types of Documents.

60. The name and contact information for any Person that has had physical access to any of the Debtors' Servers during the Relevant Period.

61. The name and contact information for any Person that has had remote access to any of the Debtors' Servers during the Relevant Period.

62. All Communications with, and/or Documents, Communications, and Electronically Stored Information, including, without limitation, all corporate organizational documents, ownership structure and organizational charts, transactions with the Debtors, and transfers of any

property or funds to or from the Debtors, concerning or referencing, and all Communications between You and any owner, shareholder, member, director, officer, employee or representative of, the following entities:

(i) Bankai International Pvt. LTD.,

(ii) Maple Gadgets Wholesale FZE,

(iii) Panamax Inc.,

(iv) CallnRoam Inc.,

(v) Bankai Infotech,

(vi) Bankai Ventures,

(vii) Bankai Labs,

(viii) MobiFin, Inc.,

(ix) Integrari Inc.,

(x) Valuit,

(xi) Blockridge,

(xii) Zeebu,

(xiii) Bankai Agrifood Private Limited,

(xiv) Vizebh Agrisciences Private Limited,

(xv) Broadband Telecom II Inc.;

(xvi) Bankai Group Inc.,

(xvii) 180 2nd Holdings LLC,

(xviii) Amba 180 Holdings LLC,

(xix) Bankai India Holdings LLC,

(xx) MobiFin IP LLC,

(xxi) Bankai Family Holding LLC,

(xxii) Bankai Technology LLC f/k/a Panamax Technology LLC, and

(xxiii) Omobio,

63. All Documents, Communications, and Electronically Stored Information concerning the storage of any of the Debtors' documents, electronic data or servers Telehouse London.

64. All Documents, Communications, and Electronically Stored Information concerning the storage of any of the Debtors' documents, electronic data or servers Telehouse International Corporation of Europe Ltd.

65. All Documents, Communications, and Electronically Stored Information concerning the storage of any of the Debtors' documents, electronic data or servers with Iron Mountain.

66. All Documents, Communications, and Electronically Stored Information concerning the relationship between the Debtors and BBT Voice Private Limited.

67. All Documents, Communications, and Electronically Stored Information concerning the relationship between the Debtors and BBT Outsourcing Private Limited.

68. All Documents, Communications, and Electronically Stored Information concerning the relationship between You and BBT Voice Private Limited.

69. All Documents, Communications, and Electronically Stored Information concerning the relationship between You and BBT Outsourcing Private Limited.